## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

**TIMOTHY YOUNG,**

　　　　**Petitioner,**

**v.**　　　　　　　　　　　　　　　**Case No. 1:21cv048-AW/MAF**

**SECRETARY, DEPARTMENT OF CORRECTIONS,**

　　　　**Respondent.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

On March 17, 2021, Petitioner Timothy Young, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  On July 29, 2021, Respondent filed an answer, ECF No. 8, and exhibits, ECF No. 9.  Petitioner filed a reply.  ECF No. 11.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases.  For the reasons stated herein, the pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Procedural Background

By amended information filed April 25, 2011, in Alachua County Circuit Court Case 2010-CF-2845, the State of Florida charged Petitioner Timothy Young with six counts, in connection with events that occurred on July 20, 2010, involving victim Kimberly Teitelbaum, the daughter of Young's girlfriend:  (1) burglary of an occupied conveyance (motor vehicle) with battery, in violation of section 810.02(2)(a), Florida Statutes; (2) aggravated battery on a pregnant woman, in violation of section 784.045(1)(b), Florida Statutes; (3) aggravated assault with a firearm, in violation of sections 784.21 and 775.087(2)(a), Florida Statutes; (4) tampering with a witness, victim, or informant, in violation of section 914.22(1)(e), Florida Statutes; (5) driving under the influence (DUI) with injury or property damage, in violation of section 316.193(3), Florida Statutes; and (6) refusal to submit to a lawful breath or urine test, in violation of section 316.1939, Florida Statutes.  Ex. A at 60-62; *see* Ex. A at 14-16 (information).[1]  Young proceeded to a jury trial and, on April 26, 2011, the jury returned a verdict finding him guilty as charged on Counts 1 through 4, and guilty of the lesser included offense of DUI on Count 5.  Ex. A at 89-90.  During the trial, the State had announced

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits, ECF No. 9, submitted with Respondent's answer, ECF No.8.

a nolle prosequi on Count 6.  *See* ECF No. 8 at 2.  On June 6, 2011, the trial judge adjudicated Young guilty and sentenced him to a total of thirty (30) years in prison.  Ex. A at 108-17; Ex. F at 335, 358-65.

Young appealed his judgment and sentence to the First District Court of Appeal (First DCA), assigned case number 1D11-3043.  On March 30, 2012, a panel of the First DCA, consisting of Judges Davis, Thomas, and Ray, affirmed the case without a written opinion.  Ex. B; Young v. State, 86 So. 3d 1124 (Fla. 1st DCA 2012) (table).  By order on May 2, 2012, Ex. D, the court denied Young's motion for rehearing, Ex. C.  The mandate issued May 18, 2012.  Ex. E.

On March 13, 2013, through counsel, Young filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Ex. F at 150-89 (exclusive of attachments).  He filed a corrected motion on April 1, 2013.  *Id*. at 265-304.  The state post-conviction trial court held an evidentiary hearing on October 16, 2014.  *See id*. at 326.  By order rendered December 22, 2014, the court granted the motion in part and denied it in part.  *Id*. at 335-47 (exclusive of attachments).  In particular, the court found trial counsel provided ineffective assistance by conceding "facts which supported Defendant's guilt to the charged offenses" during closing argument. *id*. at 341, and granted relief on that claim, *id*. at 347.

Young subsequently entered a no contest plea to Count 5. *See* Ex. F at 545. On November 23, 2015, the court sentenced him on that count to time served. *See id*. at 545-47.

On December 3, 2015, a second trial took place on the remaining counts. Ex. G (trial transcript). Young did not testify. *Id*. at 403-06. The jury returned a verdict finding him guilty on Count 1 (burglary of a conveyance) with a special finding that during the burglary, the victim was in the conveyance, and the jury did not find that, during the commission of the burglary, Young committed a battery upon the victim; not guilty on Count 2 (aggravated battery on a pregnant woman); guilty as charged on Count 3 (aggravated assault) with a special finding that, during the assault, Young was in actual possession of a firearm, but the jury did not find that Young discharged the firearm; and guilty as charged on Count 4 (tampering with a witness or victim). Ex. F at 578-80; Ex. G at 511-12.

On December 15, 2015, the court sentenced Young to five (5) years in prison, with a three-year minimum mandatory term, on Count 3, followed by consecutive terms of five (5) years in prison on Counts 1 and 4, for a total of fifteen (15) years in prison, with credit for time served. Ex. F at 583-99, 609-13. The court also ordered ten (10) years of probation on Count 1, to follow the prison portion of the sentences. Ex. F at 619-40; *see* Ex. S at 126-33.

Young appealed his judgment and sentence to the First DCA, assigned case number 1D16-220, and his counsel filed an initial brief raising one point of error.  Ex. I.  The State filed an answer brief.  Ex. J.  Young's counsel filed a reply.  Ex. K.  On June 5, 2017, a panel of the First DCA, consisting of Judges Rowe, Osterhaus, and Winokur, per curiam affirmed the case without a written opinion.  Ex. L; Young v. State, 227 So. 3d 575 (Fla. 1st DCA 2017) (table).  The mandate issued June 21, 2017.  Ex. M.  Young did not seek additional review.

On July 21, 2017, Young filed a motion to mitigate his sentence pursuant to Florida Rule of Criminal Procedure 3.800(c).  Ex. N.  By order on August 9, 2017, the state trial court denied the motion.  Ex. O.

On May 3, 2018, Young filed a Rule 3.850 motion for post-conviction relief.  Ex. P.  On May 21, 2018, he filed a motion to strike his Rule 3.850 motion, with leave to amend.  Ex. Q.  By order on May 29, 2018, the state post-conviction court granted a voluntary dismissal and dismissed the Rule 3.850 motion without prejudice.  Ex. R.

On June 4, 2018, Young filed an amended Rule 3.850 motion, raising thirteen (13) claims of ineffective assistance of counsel (IAC).  Ex. S at 51-69.  Before the court ruled on that motion, Young filed another amended Rule 3.850 motion on November 6, 2019, raising two (2) IAC claims.  Ex. S at 79-

97.  By order rendered April 16, 2020, the state post-conviction trial court summarily denied all fifteen (15) IAC claims.  *Id*. at 98-113 (exclusive of attachments).  Young appealed to the First DCA and filed an initial brief in case number 1D20-1374, challenging the denial of two of his claims.  Ex. T.  The State filed a notice that it would not file an answer brief.  Ex. U.  Young filed a response to the State's notice.  Ex. V.  On February 16, 2021, a panel of the First DCA, consisting of Judges Makar, Osterhaus, and Winokur, affirmed the case per curiam without a written opinion.  Ex. W; Young v. State, 312 So. 3d 468 (Fla. 1st DCA 2021) (table).  The mandate issued March 16, 2021.  Ex. X.

On March 17, 2021, Young filed his § 2254 petition in this Court.  ECF No. 1.  He raises two grounds, both alleging IAC:

(1)  **IAC – Failure to Move for Judgment of Acquittal (JOA) on Burglary Charge**: "Trial counsel was ineffective by failing to file a motion for judgment of acquittal due to insufficient evidence to prove the offense of burglary." *Id*. at 5.

(2)  **IAC – Failure to Renew JOA Motion on Tampering Charge**: "Trial counsel was ineffective by failing to renew a motion for judgment of acquittal as to the offense of tampering with a witness." *Id*. at 24.

On July 29, 2021, Respondent filed an answer, ECF No. 8, with exhibits, ECF No. 9.  Petitioner filed a reply.  ECF No. 11.  On July 20, 2022, the case was reassigned to the undersigned U.S. Magistrate Judge.  ECF No. 12.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Id*.

For ineffective assistance of counsel (IAC) claims, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced
> the defense.  This requires showing that counsel's errors were
> so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).   To demonstrate

ineffectiveness, a "defendant must show that counsel's performance fell

below an objective standard of reasonableness." *Id.* at 688.  To demonstrate

prejudice, a defendant "must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would

have been different." *Id.* at 694.  "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.*  For this Court's

purposes, importantly, "[t]he question 'is not whether a federal court believes

the state court's determination' under the Strickland standard 'was incorrect

but whether that determination was unreasonable – a substantially higher

threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting

Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).   "And, because the

Strickland standard is a general standard, a state court has even more

latitude to reasonably determine that a defendant has not satisfied that

standard." *Id.*  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

### **Ground 1:  IAC – Failure to Move for JOA on Burglary Charge**

In his first ground, Petitioner Young asserts his "trial counsel was ineffective by failing to file a motion for judgment of acquittal due to insufficient evidence to prove the offense of burglary."  ECF No. 1 at 5.  In particular, he asserts the State intended to prove, for the burglary conviction, "that the offense committed therein was the crime of battery." *Id*. at 6.  "So once the jury came back with a verdict of not guilty as to the offense of battery, it was counsel's duty to file a motion for judgment of acquittal as to the offense of burglary due to the fact that you can't have one without the other." *Id*.

As Respondent indicates, Young raised this claim in the second ground of his June 2018 Rule 3.850 motion, Ex. S at 51, 58-63, and in the first ground of his November 2019 motion, *id*. at 79, 81-84.  *See* ECF No. 8 at 13.  In its order denying relief, the state post-conviction court made the following findings:

> As to Ground Two of the June 2018 motion, and Ground One of the November 2019 motion, Defendant alleges that trial counsel was ineffective for failing to move for judgment of acquittal on the Burglary charge.  According to Defendant, he could not be convicted of Burglary of an Occupied Conveyance (count I) and acquitted of Aggravated Battery on a Pregnant

Woman (count II).  These two jury findings are not inconsistent.
"Defendant's acquittal [for Aggravated Battery on a Pregnant
Woman] only signified that the jury, for whatever reason,
determined that [he] was unsuccessful in carrying out his intent
to commit an offense after entering the [victim's car]."  Robinson
v. State, 393 So. 2d 33, 34 (Fla. 1st DCA 1981).  "Consummation
of intent is unnecessary to support a conviction for entering a
[conveyance] with the intent to commit an offense."  *Id*. (citing
Griffin v. State, 276 So. 2d 842, 843 (Fla. 4th DCA 1973)).  As
the Fifth District Court of Appeal noted in Conrad v. State:

> [t]o prove a burglary, the State needs to prove
> that a defendant entered a dwelling, structure, or
> conveyance with the *intent* to commit an offense
> therein. § 810.02, Fla. Stat. (2006). **The State is not
> required to prove that a defendant actually
> committed a separate crime.** *See, e.g.*, Hill v.
> State, 839 So. 2d 865 (Fla. 4th DCA 2003)
> (conviction for burglary with intent to commit theft is
> not legally inconsistent with acquittal on petit theft
> charge); Miranda v. State, 648 So. 2d 174 (Fla. 3d
> DCA 1994) (to prove offense of burglary, it was
> necessary only to show that at time of entry into
> building, defendant had fully formed intent to commit
> offense of criminal mischief, and not that defendant
> had committed offense of criminal mischief).

Conrad v. State, 977 So. 2d 766, 768 (Fla. 5th DCA 2008)
(emphasis added).  Thus, had counsel moved for judgment of
acquittal, the motion would have been denied.  For this reason,
Defendant fails to show either error by counsel or prejudice.
Accordingly, the claim raised is without merit.

Ex. S at 104-05.  On appeal, the First DCA affirmed without a written opinion.

Ex. W; Young v. State, 312 So. 3d 468 (Fla. 1st DCA 2021).   This

adjudication on the merits is entitled to AEDPA deference under 28 U.S.C.

§ 2254(d), even though no reasoning is set forth in the decision.  *See* Richter,

562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Wright v. Sec'y, Dep't of Corr., 278 F.3d 1245, 1254-55 (11th Cir. 2002). A review of the record supports the state courts' determination. *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

In particular, the state trial transcript supports the determination made by the post-conviction court that if defense counsel had moved for a JOA on the burglary charge, such motion would have been denied. As the court explained, to prove burglary, the State does not have to prove that Young actually committed a separate offense (battery), only that he had the intent to do so. Indeed, as set forth below, the trial court properly instructed the jury regarding burglary and battery:

> Burglary. To prove the crime of burglary, the State must prove the following two elements beyond a reasonable doubt:
>
> 1. Timothy Young entered a conveyance owned by or in the possession of Kimberly Teitelbaum.

2.  At the time of entering the conveyance, Timothy Young had the intent to commit an offense other than burglary or trespass in that conveyance.

    The entry necessary need not be the whole body of the defendant.  It is sufficient if the defendant, with the intent to commit a crime, extends any part of his body into the conveyance.  The intent with which an act is done is an operation of the mind and therefore, is not always capable of direct and positive proof.  It must be established by circumstantial evidence like any other fact in the case.

    Even though an unlawful entering a conveyance is proved, if the evidence does not establish that it was done with the intent to commit an offense other than burglary or trespass, the defendant must be found not guilty of burglary.

    "Conveyance" means any motor vehicle, ship, vessel, railroad car, trailer, aircraft or sleeping car.

    If you find Timothy Young guilty of burglary, you must also determine if the State has proved, beyond a reasonable doubt, whether, in the course of committing the burglary, Timothy Young battered any person.  A battery is an actual and intentional touching or striking of another person against that person's will or the intentional causing of bodily harm to another person.

    If you find Timothy Young guilty of burglary, you must also determine if the State has proved, beyond a reasonable doubt, whether, in the course of committing the burglary, there was another human being in the conveyance at the time he entered the conveyance.  An act is committed in the course of committing if it occurs in the attempt to commit the offense or in flight after attempt or commission.

Ex. G at 484-86; *see* § 810.02, Fla. Stat. (2009); Fla. Std. Jury Instr. (Crim.)

13.1.

Moreover, the record supports the jury's determination of guilt on the burglary charge.  In particular, Kimberly Teitelbaum testified at the trial that, after she pulled into the driveway of her mother's house on the evening of July 20, 2010, Young pulled in behind her and hit her car with his truck, causing damage to the left rear of the car.  Ex. G at 265-66, 267.  Teitelbaum testified that Young had been her mother's boyfriend from the time she "was 13 or 14" and, at the time of this incident, they were having problems in their relationship.  *Id*. at 263.

Teitelbaum testified that, after he hit her car, Young got out of his truck and approached Teitelbaum's window on the driver's side.  *Id*. at 266.  She rolled down her window.  *Id*. at 267.  She asked why he had hit her car, and he answered that he had not hit her car and then he said, "Do you know how people die?  I'm going to f***ing kill you."  *Id*. at 268.  She testified that Young said "he had a .45 in his car and that he was going to kill me with it" because he believed she was responsible for the problems he was having with her mother.  *Id*.  Teitelbaum testified, "I told him that I was afraid and that I wanted to go.  I asked him to please let me leave.  I told him that I was pregnant.  I just pleaded with him."  *Id*. at 269.  Young then "said he was going to kill [her], that [she] wasn't going to be able to leave."  *Id*.  She told him she was going to call the police and she reached for her phone to call 911.  *Id*.  She

testified, "He saw me with my phone and reached into the car with his body and he took his right forearm and pushed my neck against the headrest of the vehicle." *Id*. Teitelbaum testified she was not able to complete the call, she was able to enter only her passcode and "maybe 9 and 1." *Id*. at 270. When Young was reaching in and had pinned her neck against the headrest, she started to honk the car horn. *Id*. She testified Young did not get her phone and he said "it's okay, I'm going to kill you anyway" or "something like that." *Id*. at 271.

Teitelbaum testified that Young walked back to his truck, and Teitelbaum "put the car in reverse and tried to slam on the accelerator in order to either get someone's attention or try to push his car into the road to stop traffic or something." *Id*. at 272. She thinks she "may have done it a couple of times." *Id*. Young returned to her car with a gun, and pointed it at her head, yelling at her to roll down the window and that he was going to kill her. *Id*. at 273. She testified she "felt terrified" and she did not roll down the window. *Id*. She told him she "never meant him any ill will, that [she] was pregnant, and that [she] wanted to have [her] child." *Id*. at 274. Young fired the gun "right behind him," into the ground. *Id*. She then rolled down the window and he put the gun to her head. *Id*. at 274-75. She testified that Young "was really angry and just, again, you ruined my life, I'm going to

f***ing kill you." *Id*. at 275.  She then saw her mother walking toward the car, and Young turned toward her mother and took a couple steps away from the car.  *Id*.  At this point, she opened the car door and ran into the woods, where she called 911.  *Id*.

As set forth above, the jury found Young guilty of burglary (Count 1) with a special finding that Teitelbaum was inside the conveyance, but the jury did not find that Young committed a battery during the commission of the burglary.  Ex. F at 578-79; Ex. G at 511.  The jury also found Young not guilty of the separate charge of aggravated battery on a pregnant woman (Count 2).  Ex. F at 578-79; Ex. G at 511.  As the state post-conviction court explained, however, these findings are not inconsistent.  Ex. S at 104.  *See, e.g.*, Robinson, 393 So. 2d at 34; Conrad, 977 So. 2d at 768.  The State needed to prove only that Young entered the conveyance with the intent to commit an offense (battery), which it did, as evidenced by Teitelbaum's testimony summarized above.  The State did not have to prove he actually committed a separate offense (battery):   "Consummation of intent is unnecessary to support a conviction for entering a [conveyance] with the intent to commit an offense."  Robinson, 393 So. 2d at 34.

Petitioner Young has not shown that the state courts' rejection of this ground involved an unreasonable application of clearly established federal

law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

### <u>Ground 2</u>:  IAC – Failure to Renew JOA Motion on Tampering Charge

In his second ground, Petitioner Young asserts trial counsel provided ineffective assistance "by failing to renew a motion for judgment of acquittal as to the offense of tampering with a witness."  ECF No. 1 at 24.  In particular, Young asserts that, after the jury found him not guilty of battery, "it was incumbent upon trial counsel to renew that motion for the other element need[ed] to prove the offense of tampering did not exists."  *Id*. at 25.

As Respondent indicates, Young raised this claim as the second ground in his November 2019 Rule 3.850 motion.  Ex. S at 85-87; *see* ECF No. 8 at 20.  The state post-conviction trial court denied the claim, making the following findings:

> As to Ground Two of the November 2019 motion, Defendant alleges that trial counsel was ineffective for failing to renew the motion for judgment of acquittal for the offense of Tampering with a Witness, Victim, or Informant.  At the close of the State's case-in-chief, defense counsel moved for judgment of acquittal on the Tampering charge based on the fact that Defendant never touched the victim's phone.  *See* Trial Transcript at 176 (lines 11-25) – 178 (line 1).  The court denied the motion.  And, subsequent to the denial, the defense rested, having presented no evidence.  *Id*. at 181 (lines 16-21).  Counsel did not renew his motion for judgment of acquittal.  Defendant argues that this was error; and, as a result, the issue was not preserved for appeal.

> "[A] defense motion at the close of the State's case-in-chief is sufficient to preserve any specific argument made therein." E.H. v. State, 170 So. 3d 957, 958 (Fla. 1st DCA 2015). "Renewal is not necessary for preservation purposes." Id. (citing Morris v. State, 721 So. 2d 725, 727 (Fla. 1998) (holding that it is unnecessary to require a defendant to renew the motion for a judgment of acquittal after the defendant has presented evidence because once the motion has been made at the close of the State's case and brought to the trial court's attention, the trial court has been given an opportunity to rule on the precise issue for purposes of preservation for appeal). For this reason, Defendant fails to show either error by counsel or prejudice. Accordingly, the claim raised is without merit.

Ex. S at 112-13. On appeal, the First DCA affirmed without a written opinion. Ex. W; Young v. State, 312 So. 3d 468 (Fla. 1st DCA 2021). This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d 1245, 1254-55 (11th Cir. 2002). A review of the record supports the state courts' determination. *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, the state court transcript supports the findings made by the post-conviction court regarding the JOA motion made by defense counsel and the trial court's ruling. After the State rested, the following transpired, outside the presence of the jury:

> THE COURT: Mr. Almquist?

> MR. ALMQUIST [defense counsel]: Yes, Your Honor. I do have a motion for judgment of acquittal. I do have – I do have it

all of the counts.

Specifically for the tampering with a victim, witness or informant, because the focus on – the elements of that are that the defendant knowingly used intimidation, threatened or engaged in misleading conduct with the intent to hinder, delay or prevent communication to law enforcement relating to the commission of the offense.

And taking – the State – taking the evidence in the light most reasonable to the State, the alleged victim, Ms. Teitelbaum, was in the process of calling 911 when – her testimony is that Mr. Young was reaching for her phone.

He did not even touch her phone. He did nothing to stop her from calling. She was in the process of calling and she could have completed that call. There was nothing he was doing to stop her from calling.

He – according to her, of course, and taking the evidence in the light most reasonable to the State, he was attacking her, he was perhaps battering her, he was doing things, but her hand was free, her hand was on her phone, she could have completed that.

And to further this that she could have done that, as soon as he left, she did not complete that. She could have done this mere moments later after he did whatever he did. But she could have done this at any point. At no point did she say he touched my phone, he grabbed my phone, he touched my arm to cause me to drop my phone.

He didn't do any of those things that would have prevented her from making that phone call. She could have done that. And he did nothing to hinder, delay or prevent the communication. She could have completed that phone call.

THE COURT:  Well, based on my recollection of the evidence, I'm going to deny the motion, again, taking the evidence in a light most favorable to the State.

Ex. G at 401-03.  After the jury returned to the courtroom, the defense rested

as well, electing to present no testimony.  *Id*. at 430.  The judge instructed

the jury with regard to the tampering charge, in accordance with the

applicable statute and standard jury instruction:

> Count IV, tampering with a witness or victim.  To prove the
> crime of tampering with a witness or victim, the State must prove
> the following three elements beyond a reasonable doubt:
>
> 1. Timothy Young knowingly . . . A, used or attempted to use
>    intimidation or physical force against Kimberly Teitelbaum; or
>    B, threatened Kimberly Teitelbaum.
>
> 2. Timothy Young did so with the intent to cause or induce
>    Kimberly Teitelbaum to hinder, delay or prevent the
>    communication to a law enforcement officer or judge of
>    information relating to the commission or possible
>    commission of an offense.
>
> 3. The offense involved the investigation of a criminal offense.
>
> "Physical force" means physical action against another and
> includes confinement.

Ex. G at 494; *see* § 914.22(1)(e), Fla. Stat. (2009); Fla. Std. Jury Instr. (Crim.)

21.10.

As explained above, the jury found Young had not committed a battery

with regard to the burglary charge (Count 1) and found him not guilty of the

separate charge of aggravated battery on a pregnant woman (Count 2).  The

jury did find Young guilty as charged of aggravated assault with a firearm

(Count 3) and guilty as charged of tampering with a witness or victim (Count

4).  Ex. F at 578-80; Ex. G at 511-12.

Young argues that, after the verdict, defense counsel should have again moved for a JOA because the jury had found him not guilty of battery and, thus, the State had not shown he used physical force.  As Respondent indicates, however, and as indicated by the jury instruction quoited above, a finding that a battery occurred or that physical force was used is not required to prove tampering; rather, the offense could involve a threat or the attempted use of intimidation or physical force.  *See* Ex. G at 494; § 914.22(1)(e), Fla. Stat. (2009); Fla. Std. Jury Instr. (Crim.) 21.10.  Contrary to Young's argument, the State did not have to prove a battery occurred to prove the offense of tampering with a witness or victim.

The record supports a finding that Young committed the offense of tampering with a witness or victim.  In particular, as set forth in the analysis of Ground 1, *supra*, Kimberly Teitelbaum testified at trial that, during the episode with Young on July 20, 2010, she "told him that [she] was afraid and that [she] wanted to go" and she "asked him to please let [her] leave."  *Id*. Ex. G at 269.  Young then "said he was going to kill [her], that [she] wasn't going to be able to leave."  *Id*.  She told him she was going to call the police and she reached for her phone to call 911.  *Id*.  She testified, "He saw me with my phone and reached into the car with his body and he took his right

forearm and pushed my neck against the headrest of the vehicle." *Id*. Teitelbaum testified she was not able to complete the call as she was able to enter only her passcode and "maybe 9 and 1." *Id*. at 270. She testified Young did not get her phone. *Id*. at 271. She was able to call 911 after she ran into the woods. *Id*. at 275. Thus, Teitelbaum's testimony shows that Young "used or attempted to use intimidation or physical force," or threatened Teitelbaum, to prevent her from calling 911 while in her car.

Petitioner Young has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## Conclusion

Petitioner Young is not entitled to federal habeas relief. It is respectfully **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue

or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 6, 2022.

S/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.